OPINION
Donald Palmer appeals the decision of the Belmont County Common Pleas Court which denied his petition for post-conviction relief without an evidentiary hearing. Appellant sought relief from his convictions of aggravated murder, aggravated robbery and his sentence of death. For the following reasons, the trial court's judgment is affirmed.
 STATEMENT OF FACTS
On May 8, 1989, appellant was riding as a passenger in Edward Hill's vehicle. The two were driving on County Road 2 when they ran into the back of a truck driven by Charles Sponhaltz. Thereafter, appellant exited Hill's vehicle and shot Sponhaltz twice in the head. When Steven Vargo, a passing motorist, stopped to render assistance, appellant shot him twice in the head also. The contents of the victims' pockets were taken. The body of Sponhaltz was placed in the back of his truck and his truck was abandoned in a nearby field. Vargo's body was left lying on the roadway.
Appellant confessed to the shootings and also testified at trial. He claimed that Sponhaltz yelled at Hill for hitting his truck and then grabbed Hill. Appellant also claimed that when he went to hit Sponhaltz in the head with the gun, the gun accidentally discharged. Sponhaltz then swore at appellant and fell to the ground. Hill allegedly said, "Kill him. Kill him." (Tr. 1096). Appellant complied by shooting Sponhaltz twice, once on each side of his head. As they were walking back to Hill's vehicle, Vargo appeared in front of appellant. Appellant stated that he shot Vargo in the head two or three times in panic and confusion without a chance to reflect on his actions. (Tr. 1098) He claimed he did not intend to kill Vargo. (Tr. 1100). Nonetheless, appellant admitted that the hammer of the gun had to be manually pulled back before each shot was fired. (Tr. 1113).
On May 23, 1989, appellant was indicted for two counts of aggravated murder in violation of R.C. 2903.01(A) which specifies prior calculation and design, two counts of aggravated murder in violation of R.C. 2903.01(B) which entails felony-murder, and two counts of aggravated robbery. Each count carried a firearm specification. The following two death penalty specifications were alleged with regards to the deaths of Sponhaltz and Vargo: R.C. 2929.04(A)(5) for killing more than one person and (A)(7) for killing in the course of an aggravated robbery and acting as the principal offender or with prior calculation and design. A third death specification under subsection (A)(3) was added for killing Vargo in order to escape detection.
On October 13, 1989, a jury found appellant guilty of all charges and thereafter recommended the death penalty. On November 8, 1989, the court adopted the jury's recommendation of death. His appeal was presented by attorneys different from those he had at trial. Appellant's conviction and death sentence have since been upheld. State v. Palmer (Aug. 29, 1996), Belmont App. No. 89-B-28, unreported [hereinafter Palmer, unreported], affirmed in (1997), 80 Ohio St.3d 543 [hereinafter Palmer]
On September 20, 1996, appellant filed a petition for post-conviction relief which contained forty-two grounds for relief. The trial court denied the petition without a hearing and adopted the state's proposed findings of fact and conclusions of law in toto. The court's judgment entry listed appellant's grounds for relief and labeled each of them as unaddressable for one or more of the following reasons: barred by res judicata; unsupported by sufficient documentation; involved events occurring after trial; and alleged errors that are not constitutional violations. The within timely appeal followed.
 ASSIGNMENTS OF ERROR
Appellant sets forth the following five assignments of error:
 "THE TRIAL COURT ERRED IN SUMMARILY DISMISSING APPELLANT PALMER'S POST-CONVICTION PETITION WITHOUT ACCORDING HIM AN EVIDENTIARY HEARING."
 "THE TRIAL COURT ERRED IN FINDING THAT APPELLANT'S CLAIMS WERE SUBJECT TO THE BAR OF RES JUDICATA, AND IN FAILING TO ADDRESS THE MERITS OF THE CLAIMS."
 "THE TRIAL COURT ERRED IN DENYING APPELLANT ANY OPPORTUNITY TO CONDUCT DISCOVERY OF FACTS AND EVIDENCE NECESSARY TO JUSTIFY HIS OPPOSITION TO SUMMARY DISMISSAL."
 "THE TRIAL COURT ERRED IN REFUSING TO CONSIDER APPELLANT'S CLAIM OF INEFFECTIVE ASSISTANCE OF COUNSEL AT TRIAL."
 "THE TRIAL COURT ERRED WHEN IT OVERRULED APPELLANT'S PETITION TO VACATE OR SET ASIDE JUDGMENT AND/OR SENTENCE WHEN EACH OF THE FORTY-TWO CLAIMS FOR RELIEF SET FORTH A CONSTITUTIONAL VIOLATION UPON WHICH RELIEF SHOULD HAVE BEEN GRANTED."
Appellant argues that the trial court should have held an evidentiary hearing on appellant's petition for post-conviction relief. Before this hearing, appellant claims he could have found more support for his grounds for relief. He argues that the grounds for relief that he presented were not barred by resjudicata even if they were addressed on appeal.
 APPLICABLE LAW
A petition for post-conviction relief may be filed by one convicted of a criminal offense who believes his conviction is void or voidable due to an infringement of his constitutional rights. See R.C. 2953.21(A)(1). A trial court shall not grant a hearing on a petition for post-conviction relief unless there exists substantive grounds for relief. See R.C. 2953.21(C) and (E). To decide whether there are substantive grounds for relief, that trial court shall consider the following items:
 "* * * in addition to the petition, the supporting affidavits, and the documentary evidence, all the files and records pertaining to the proceedings against the petitioner, including, but not limited to, the indictment, the court's journal entries, the journalized records of the clerk of the court, and the court reporter's transcript." Id.
As such, a petitioner is not automatically entitled to a hearing. State v. Jackson (1980), 64 Ohio St.2d 107, 110. The trial court has a duty to confirm that the petitioner advances enough evidence to warrant a hearing. State v. Cole (1982),2 Ohio St.3d 112, 113. Furthermore, the doctrine of res judicata
can be utilized to dismiss a petition for post-conviction relief without a hearing. Id.; State v. Lester (1975), 41 Ohio St.2d 51,55. As the Supreme Court first held in State v. Perry (1967),10 Ohio St.2d 175:
 "Under the doctrine of res judicata, a final judgment of conviction bars a convicted defendant who was represented by counsel from raising and litigating in any proceeding except an appeal from that judgment, any defense or claimed lack of due process that was raised or could have been raised by the defendant at the trial, which resulted in that judgment or conviction, or on an appeal from that judgment." Id. at paragraph nine of the syllabus, reaffirmed in State v. Szefcyk (1996), 77 Ohio St.3d 93, 96.
This doctrine is not applicable to a post-conviction petition where the defendant's trial and appellate counsel were the same,State v. Lentz (1994), 70 Ohio St.3d 527, 529-530. However, as aforementioned, appellant had different lawyers on appeal than he had at trial. Thus, res judicata may be properly utilized in this case.
A petition which is not barred by the doctrine of res judicata
can also be dismissed without a hearing for failing to state a constitutional claim, such as ineffective assistance of counsel. Although, if a petitioner alleges ineffective assistance of counsel, the allegations must have occurred off the record. Statev. Cooperrider (1983), 4 Ohio St.3d 226, 228 (stating that the doctrine of res judicata does not apply to claims of ineffective assistance of counsel which are based upon facts not appearing in the record). Moreover, the petitioner must proffer evidence which establishes that trial counsel substantially violated an essential duty owed to a client and that such violation prejudiced the petitioner's defense. Cole, supra at 114.
 APPLICATION OF THE LAW
As appellant's arguments in this appeal essentially revolve around the forty-two claims for relief set forth in his petition for post-conviction relief, we will structure our analysis by individually addressing such claim for relief in numerical order. Many of the claims for relief contained in appellant's petition for post-conviction relief can be summarily dismissed without a hearing on the basis of res judicata as they were or could have been raised in appellant's direct appeal. See, e.g., Szefcyk,supra at 96; Lester, supra at 55. These claims were addressable on direct appeal because they were based upon facts appearing in the record. Other claims may allude to facts outside of the record, but they contain insufficient documentation to substantiate appellant's entitlement to relief. A couple of appellant's claims are not reviewable by the trial court as they deal with our review on direct appeal.
Most of appellant's first claim for relief, subparts A, B, C, D and F, sets forth legal arguments which allege that Ohio's death penalty scheme violates various constitutional provisions. Appellant has already raised this argument on direct appeal in assignment of error number twenty-three. Palmer, unreported,supra at 22. Thus, res judicata bars appellant from rearguing these contentions. Any arguments about the constitutionality of the death penalty that were not specifically argued in appellant's brief on direct appeal could have been argued. Because these claims could have been proffered on appeal, resjudicata bars their presentation in post-conviction proceedings. See State v. Reynolds (1997), 79 Ohio St.3d 158, 161.
Subpart E of appellant's first claim for relief argues that death by electrocution is cruel and unusual. Appellant's petition listed examples of eight "botched executions" and quoted a neurobiologist and a newspaper reporter who witnessed an electrocution. Appellant posits that such information is de hors
the record and thus constitutes a valid reason to preclude the application of res judicata. However, appellant need not take the chance of a botched electrocution for R.C. 2949.22(B)(1) gives him the right to elect to be executed by lethal injection. Thus, no constitutional argument exists here, and the trial court had no obligation to explore appellant's aversion to electrocution.
Appellant's second post-conviction claim for relief states that the trial court erred in admitting "other acts" evidence. This argument centers around facts that appear in the record. For this reason, appellant has already argued this claim in his third and fourth assignments of error on direct appeal. Palmer, unreported at 6-8. We held that these assignments lacked merit. Id. Hence, the res judicata bar is clearly applicable to this claim.
Appellant's third and fourth claims for relief allege that the trial court erred by denying his requests for instructions on self-defense and the lesser included offense of involuntary manslaughter. However, we have previously ruled against appellant on these issues. Palmer, unreported at 8-10. Appellant's fifth and sixth post-conviction claims for relief state that the trial court committed plain error by giving an erroneous jury instruction on the mental state of purposely and by failing to give a limiting instruction on "other acts." These claims are resjudicata as we have previously overruled them. Palmer, unreported at 10-11.
Appellant's seventh and eighth claims for relief complain that the trial court erred by admitting a handgun and the unsworn testimony of a witness into evidence. Once again, we have already determined appellant's arguments on these issues to be unpersuasive. Palmer, unreported at 11-13. Appellant's ninth claim for relief alleges that there is insufficient evidence to support his convictions of aggravated murder and robbery. This claim is barred by the doctrine of res judicata as we previously held that there was sufficient evidence to sustain appellant's convictions. Palmer, unreported at 15-16.
Appellant's tenth, eleventh, and fourteenth claims deal with alleged prosecutorial misconduct. We have determined that these allegations are meritless. Palmer, unreported at 13-15, 17-18. Appellant's twelfth claim argues that the trial court erred by failing to order the election of counts prior to sentencing. However, appellant has had this issue decided unfavorably to him.Palmer, unreported at 16. Appellant's thirteenth claim for relief contends that the trial court erred by excluding certain purportedly mitigating evidence in the form of a particular reverend's testimony. This claim has already been addressed and dismissed. Palmer, unreported at 16-17.
Appellant's fifteenth claim for relief alleges that the court's instruction at sentencing about unanimity was erroneous. Such allegation has been decided unfavorably to appellant. Palmer, unreported at 18-19. Appellant's sixteenth claim for relief professes that the trial court erred by allowing the jury to consider multiple specifications which arose from an indivisible course of conduct. However, we have previously overruled this claim. Palmer, unreported at 19, affirmed in Palmer at 574. Appellant's seventeenth claim for relief deals with jury instructions on weighing the aggravating and mitigating circumstances. This argument has been overruled. Palmer, unreported at 19-20.
Appellant's eighteenth claim for relief deals with ineffective assistance of trial counsel. This claim lists eighteen instances of purported ineffectiveness. Many of these instances are currently barred from consideration because they were briefed by appellant on direct appeal. Palmer, unreported at 20. Many of these instances may not be considered because they could have been raised by appellant on direct appeal. The ensuing allegations of ineffective assistance are not barred by resjudicata but involve other obstacles. As held in State v. Jackson
(1980), 64 Ohio St.2d 107:
 "In a petition for post-conviction relief, which asserts ineffective assistance of counsel, the petitioner bears the initial burden to submit evidentiary documents containing sufficient operative facts to demonstrate the lack of competent counsel and that the defense was prejudiced by counsel's ineffectiveness." Id. at syllabus.
Jackson was upheld in State v. Kapper (1983), 5 Ohio St.3d 36,38, where the court held that the petitioner must submit evidentiary documents containing sufficient operative facts and cannot rest on self-serving declarations of ineffective assistance of counsel.
Appellant's complaint that his counsel failed to request the assistance of a pharmacologist or toxicologist during the guilt phase lacks merit based upon our analysis of this same argument in appellant's twenty-sixth claim for relief infra. Appellant's complaint that his counsel failed to request the assistance of a toxicologist to testify in the mitigation phase can only be heard in a post-conviction proceeding if he submitted sufficient documentation to show that he is entitled to relief. In the case at bar, appellant failed to submit affidavits to support his contention that such an expert would have made it reasonably likely that the result of the trial would have been different. Moreover, no great expertise is required to determine the effects of alcohol on a person. See State v. Wilcox (1982), 70 Ohio St.2d 182,194. See, also, our examination of appellant's twenty-sixth claim for relief.
The same documentation theory applies to appellant's claim that his attorney should have requested the assistance of a mitigation specialist in the form of a social worker. See, also, appellant's thirty-fifth claim for relief where he argues that the court had the duty to appoint a social worker. Because there is no evidence that a social worker would have discovered mitigating factors other than those presented at trial, appellant had the obligation to proffer documentation of his claim. See Id.; State v. Clayton
(1980), 62 Ohio St.2d 45, 49. Without appropriate documentation showing substantive grounds for relief, the court could deny this claim without a hearing. See R.C. 2953.21(C) and (E).
This leaves appellant's protest that his counsel should have motioned for a change of venue due to pretrial publicity surrounding the case. Attached to appellant's petition are approximately twenty-seven newspaper articles that were published before the jury was selected. (The attached articles that were published after jury selection are not relevant to pretrial publicity). The trial court stated that this argument is barred by res judicata because nothing precluded appellant from directly appealing this issue. Although the newspaper articles are outside of the record, whether too much pretrial publicity preceded the case and resulted in a partial jury can be determined by reviewing the voir dire transcript.
The transcript establishes that each juror was questioned individually and privately about pretrial publicity and its effect on them. Most of the jurors had not read an article about the multiple-murder since it first occurred five months earlier. (Tr. 167, 200, 253). The great majority of the jurors stated that they vaguely remembered the articles that they read in the newspaper. (Tr. 168, 182-186, 196, 243, 254, 283, 386, 516, 533). They all promised to lay aside whatever information that remained in their minds and determine the case based solely upon the evidence presented at trial. (Tr. 165, 183, 195, 247-48, 254, 283, 373, 436, 501, 517, 534, 555)
Simply attaching exhibits containing facts outside of the record to a petition does not defeat the application of resjudicata. The exhibits must show that the petitioner could not have appealed his claim based upon the information in the original record. See State v. Lawson (1995), 103 Ohio App.3d 307,315. See, also, State v. Combs (1994), 100 Ohio App.3d 90, 97-98
(stating that if the evidence offered in a post-conviction petition is cumulative of, or alternative to, material presented at trial, the court may properly deny a hearing). Because the issue of whether a reasonable attorney should have motioned for a change of venue due to pretrial publicity could have been determined from the voir dire transcript in the case at bar, the issue is res judicata. The mere presentation of the newspaper articles does not transform appellant's claim into one which is based upon facts de hors the record.
Appellant's nineteenth claim for relief complains that the record is not complete. However, we have already addressed this claim. Palmer, unreported at 4-5. Appellant's twentieth claim for relief argues that the trial court gave erroneous instructions on inferences. We have also previously disposed of this issue.Palmer, unreported at 5-6. Therefore, res judicata bars revisitation of these issues.
Appellant's twenty-first and twenty-second claims for relief contend that venue should have been changed due to excessive media coverage of the case. In support, appellant quotes the voir dire of Juror Melchiorie who stated that he initially formed his own conclusion based on newspaper stories. He then stated that his mind remains open and he will decide the case based upon the evidence presented at trial. (Tr. 555, 565-66). When asked if he was willing to say that what he read no longer exists in his mind, the juror said that it is difficult to give a yes or no answer as to the existence of general information in his head. (Tr. 565-66). Appellant's complaint about this juror's mind set is based on the record and could have been raised on direct appeal. Likewise, appellant's twenty-third claim for relief complains about biblical references made by the prosecutor. Said allegation is similarly based upon evidence in the record and thus could have been raised on direct appeal. As such, consideration of these claims is barred by res judicata.
Appellant's twenty-fourth claim for relief is identical to one of the many allegations contained in claim number eighteen. Appellant alleges ineffective assistance of counsel based on his counsel's withdrawal of a motion to suppress before having the motion heard. This issue is based upon facts which appear on the record. Furthermore, the Supreme Court has ruled that trial counsel reasonably chose to withdraw a meritless motion to suppress. Palmer, supra at 26. In accordance, appellant is not permitted to relitigate this issue.
Appellant's twenty-fifth claim for relief complains that the trial court failed to instruct the jury that it must make an express finding as to specific intent. Issues with regard to jury instructions are to be raised on direct appeal for they entail consideration of the record. Appellant raised other problems with the jury instructions on direct appeal. A convicted defendant cannot perpetually review his/her transcript, realize that there are more areas to probe and ask the trial court to revisit these areas after the direct appeal has been decided. Alleged errors which are apparent from the record and which could have been raised on direct appeal are barred from later challenge.
Appellant's twenty-sixth claim for relief complains that he was not appointed an expert who would testify that he was unable to form a specific intent to commit the crimes due to intoxication or mental disorder. From the Mitigation Hearing Transcript it can be seen that Newton Jackson, Ph.D., interviewed appellant for six hours on August 19, 1989 and tested him for three hours. Dr. Jackson testified that appellant has a borderline personality which is characterized by sudden intense bursts of anger, strong suspicion of others and uncertainty as to what is happening around him. (Mitigation Tr. 85-87). He stated that appellant is not criminally insane but that his mental condition qualifies as a mitigating factor.
Appellant's allegation that testimony on his mental disorder and his intoxication should have been presented by an expert at the guilt phase of his trial is unfounded. Case law precedent establishes that:
 "* * * except in the mitigation phase, `a defendant may not offer expert psychiatric testimony, unrelated to the insanity defense, to show that due to mental illness, intoxication, or any other reason, he lacked the mental capacity to form the specific mental state required for a particular crime or degree of crime.'" State v. Mitts (1998), 81 Ohio St.3d 223, 227, citing State v. Cooey
(1989), 46 Ohio St.3d 20, 26; Wilcox, supra at 194.
Thus, appellant has absolutely no right to an expert who would testify at the guilt phase that he lacked specific intent.
Appellant also alleges that an expert should have been appointed to testify at the mitigation hearing to show that he was intoxicated during the murders. Appellant himself testified that he drank a bottle of Southern Comfort Whiskey to decrease his desire for cocaine. At trial, appellant testified as to what happened on the day of the murders. As aforementioned in appellant's eighteenth claim for relief, appellant presented no documentation to support his claim that expert testimony on intoxication was required. Accordingly, appellant's twenty-sixth claim for relief is without merit.
Appellant's twenty-seventh claim for relief argues that the mandatory nature of Ohio's death penalty law is unconstitutional. Appellant raised this issue on direct appeal on page 144 of his brief. We overruled appellant's arguments with regards to the constitutionality of Ohio's death penalty law. Palmer, unreported at 22. Thus, appellant is precluded from raising these constitutionality arguments again. Moreover, the Supreme Court has rejected such an argument. State v. Williams (1995), 73 Ohio St.3d 153,172-173, citing State v. Jenkins (1984), 15 Ohio St.3d 164
and State v. Maurer (1984), 15 Ohio St.3d 239.
Appellant's twenty-eighth claim for relief argues this appellate court failed to fulfill its statutory obligation to fully review the proportionality of appellant's death sentence. First of all, a defendant may not ask a trial court to find that an appellate court did not uphold its statutory duties when it reviewed the case on direct appeal. See State v. Murnahan (1992),63 Ohio St.3d 60, 65 and State v. Combs (1994), 100 Ohio App.3d 90,98-99 (holding that a trial court has no jurisdiction to review actions and decisions of superior courts). Any problem that appellant had with our review or with the issue of a limited pool of cases should have been raised before the Supreme Court. Secondly, we did conduct a proportionality review in this case.Palmer, unreported at 24-26. Thirdly, the Supreme Court has also conducted a proportionality review and upheld appellant's sentence. Palmer at 577. Therefore, the trial court was not permitted to hold an evidentiary hearing on this issue.
Appellant's, twenty-ninth claim for relief states that it was error for the court to impose the death penalty because an aggravating circumstance duplicated an element of felony murder. Appellant could have raised this argument on direct appeal to this court. Moreover, this argument was found unpersuasive by the Supreme Court. Palmer at 574.
Appellant's thirtieth claim for relief argues that appellant was denied his right to have the jury consider whether or not to impose life imprisonment without parole. On July 1, 1996, the legislature amended R.C. 2929.03(C)(2) to give juries in capital cases the option to consider life without parole. Before that the options were death, life with parole eligibility after thirty years, and life with parole eligibility after twenty years. Appellant contends that if the amended law was in effect when he was being sentenced, the jury may not have imposed the death penalty.
The amendment to R.C. 2929.03(C)(2) was part of the modified sentencing provisions contained in Am. Sub. S.D. No. 2. These sentencing provisions only apply to crimes committed on or after July 1, 1996. Contrary to appellant's arguments, the amended statute is inapplicable to him and his rights were not violated by application of the preamendment law to his case. See State v.Raglin (1998), 83 Ohio St.3d 253, 260 (stating that the trial court shall not instruct the jury on the sentencing option of life without parole for a capital defendant whose crime was committed before July 1, 1996). As there is no indication that appellant is entitled to relief on this claim, the trial court had no duty to hold an evidentiary hearing on this issue.
Appellant's thirty-first claim for relief chastises the trial court for telling the jury that they shall make a sentencing "recommendation" to the court. Appellant claims that this term improperly informs the jury that if they choose to sentence appellant to death, that decision is not binding because the judge will review the propriety of a death sentence. Since this allegation is based upon recorded events, it should have been raised on direct appeal along with the other allegations of improper instructions. Hence, this argument is barred by the doctrine of res judicata. Furthermore, the Supreme Court has since rejected this argument. See State v. Getsy (1998), 84 Ohio St.3d 180,202.
Appellant's thirty-second claim for relief declares that the court erred by ruling that a visual aid used by the prosecutor during closing arguments at the sentencing phase would not be made a part of the record on appeal. Appellant's attorney specifically asked that the following arguments be put on the record:
 "MR. NICHELSON: Well, Your Honor, viewing the prosecution's visual aid, it aggravates me to no end. They will be allowed to use visual [sic] aid with large printed aggravating factors and at the bottom two other factors which are not aggravating factors. Under State versus Jenkins, 1984 case out of the Supreme Court at 15 Ohio State 3d 164 [sic], the Supreme Court very clearly indicated that the prosecutor can only discuss or argue those mitigating factors presented by the defendant and the aggravating factors proved at trial and nothing else. And there would be no need to delve in on discussion at the argument stage circumstances of the offense except as they might relate to the aggravating circumstances proved at the first stage of the trial.
THE COURT: So what are you asking?
 MR. NICHELSON: Well, simply that the visual aid not be used in its form; that the State be instructed to limit its argument to only those mitigating factors in evidence and the aggravating factors proved at trial, period.
 MR PIERCE [Prosecutor] : * * * If the chart is that big of a problem, I won't use it at all. I thought it would help the jury know the aggravating and mitigating factors and weighing process. I can take the bottom off. * * *.
 THE COURT: * * *. Now, it will be up to you whether you want to use it or not. You want to take the chance in an appellate court, that's up to you.
* * *
 MR. PIERCE: May I say for the record, Your Honor, we are going to delete from the bottom of our chart the reference to the nature and circumstances and history and character. So the chart will only say the three aggravating and the three mitigating that the defense has asked for a charge on. * * *.
 MR. NICHELSON: Well, since I have posed an objection on the basis of the visual aid, I suppose we are going to have to maintain it as part of the record for review, too.
 THE COURT: Well, that will be overruled." (Mitigation Transcript 137-139)
Appellant makes no assertion about how his defense or his appeal was prejudiced by the visual aid. In fact, the state removed the contested content from the display. Thus, a trial court would be hard-pressed to find substantive grounds for relief justifying an evidentiary hearing. Moreover, as can be observed from the aforementioned excerpt, any argument about the use or preservation of this visual aid could have been raised on direct appeal. Appellant seems to imply that portions of this argument are based on facts outside of the record, such as the size of the visual aid. Nevertheless, appellant makes no assertion about the size, even though his trial attorney stated on the record that he was going to take measurements. (Mitigation Tr. 139-140).
Appellant's thirty-third claim for relief states that the trial court's weighing process was faulty and resulted in a death verdict that was against the weight of the evidence. Appellant complains about the lack of a judgment entry explaining why the aggravating circumstances outweigh the mitigating factors. This contention was raised by appellant on direct appeal in his twenty-first assignment of error. We held that the lack of content in the judgment entry is not grounds for reversal since we conduct our own independent review. Palmer, unreported at 21. Moreover, the Supreme Court conducts an independent review.Palmer at 42-43. Therefore, this claim is precluded by the doctrine of res judicata. Appellant also complains about duplicative death specifications; however this claim was overruled by this court and by the Supreme Court on direct appeal. Palmer at 574; Palmer, unreported at 19.
Appellant's thirty-fourth claim for relief states that trial counsel failed to present all of the mitigating evidence at the mitigation phase of the trial. This claim is based upon evidence outside of the record and thus constitutes a proper topic for a post-conviction relief petition. However, as the trial court ruled, appellant presented insufficient documentation to support this claim. Appellant's petition states that there existed mitigating evidence other than that which was presented at the mitigation phase of trial. Nonetheless, appellant's petition contains no affidavits supporting his claim. Furthermore, appellant does not even divulge the categories of the purported mitigating evidence. As such, the court properly held that an evidentiary hearing was not warranted.
Appellant's thirty-fifth claim for relief alleges that his sentence is void because his trial counsel did not request and the trial court did not appoint a social worker to assist in preparing for the mitigation phase of trial. The general argument about the appointment of a social worker could have been addressed on direct appeal. As to what information this social worker would have discovered, appellant failed to present any evidence or even allegations. Thus, the same theory applies here that we applied to appellant's eighteenth and thirty-fourth claims for relief.
It is at this point that appellant avers that he could have presented evidence of other important mitigating evidence had the court granted a hearing on his petition with the opportunity to conduct discovery. However, contrary to appellant's assertions, investigation of potential claims for relief must be performed before a petition is filed because the petition must demonstrate that appellant is entitled to relief. See R.C. 2953.21(C) and (E). Broad conclusory statements such as those set forth by appellant do not meet such a standard. Kapper, supra at 39. To survive dismissal, a petition must be sufficiently factual; it must contain facts not possibilities. "[M]ere hypotheses and a desire for further discovery" shall not establish entitlement to an evidentiary hearing. See Lawson, supra at 315; State v. Cook
(Dec. 29, 1995), Hamilton App. No. 950090, unreported, 2. In the present case, a factual basis supporting appellant's desire for discovery is lacking.
Appellant's thirty-sixth claim for relief argues that the court erred in denying appellant's motion for a new trial. Firstly, the grounds set forth in appellant's new trial motion are the same grounds that he set forth in his direct appeal and in his petition for post-conviction relief. Secondly, appellant had the opportunity to appeal the denial of his motion for a new trial. Thirdly, the motion for new trial is solely based upon facts which are in the trial record. Thus, res judicata bars reconsideration of appellant's arguments.
Appellant's thirty-seventh claim for relief argues that the trial court should have appointed a pharmacologist or toxicologist to assist in appellant's defense. In response, we direct appellant to our discussion of this same issue in the context of ineffective assistance of counsel under appellant's eighteenth claim for relief. We also point appellant to our analysis under his twenty-sixth assignment of error dealing with appointment of an intoxication expert. Finally, we refer appellant to our reasoning under his thirty-fifth claim for relief dealing with his complaint that he was not appointed a social worker.
Appellant's thirty-eighth claim for relief alleges that the state failed to provide appellant with exculpatory evidence. Appellant argues that the state should have notified appellant that George Goolie pled guilty to assault against Edward Hill at some time in the past. Goolie testified at appellant's trial that appellant called him on the day of the murders and told him that he would kill him. (Tr. 972). Goolie's testimony was stricken from the record before the jury began deliberations. (Tr. 1054). We have already held that complaints with regard to Goolie's testimony are moot given the fact that his testimony was stricken from the record. Palmer, unreported at 7.
Furthermore, in the denial of appellant's petition for post-conviction relief, the trial court held that the claim that the prosecutor withheld evidence is not supported by sufficient documentation. Appellant did not submit a judgment entry to prove that Hill had ever pled guilty to assaulting Goolie. Without knowing where this alleged guilty plea took place, there is no evidence that the county prosecutor's office was explicitly or implicitly aware of the plea. Finally, there is nothing to suggest that Goolie's alleged conviction for assaulting Hill constitutes exculpatory evidence in appellant's case. See Combs, supra at 98 (stating that if the evidence is irrelevant or raises a non-prejudicial constitutional claim, the evidence will not provide substantive grounds for relief). Since a petition does not warrant an evidentiary hearing if it fails to demonstrate that the petitioner is entitled to relief from judgment, the trial court properly denied a hearing on this claim.
Appellant's thirty-ninth claim for relief complains about the disparity in sentences between himself and Edward Hill who received a life sentence with parole eligibility after thirty years. Appellant states that Hill was acquitted of the aggravated murder of Sponhaltz and of felony murder, but convicted of the murder of Sponhaltz and of the aggravated murder of Vargo with prior calculation and design. Once again, the trial court stated that appellant's petition lacked sufficient documentation. Appellant did not submit a judgment entry to prove Hill's conviction and sentence. Moreover, the Supreme Court has held that mere disparity in sentences between accomplices does not justify reversal. State v. Burke (1995), 73 Ohio St.3d 399, 407;State v. Green (1993), 66 Ohio St.3d 141, 151; State v. Jamison
(1990), 49 Ohio St.3d 182, 190. Thus, appellant did not demonstrate that he was entitled to relief on this claim.
Appellant's fortieth claim for relief complains about a jury instruction and cites to the transcript. This argument is based upon events occurring on the record and is therefore not a proper topic for a post-conviction relief petition. Furthermore, appellant's argument is without merit. The case he cites, Statev. Penix (1987), 32 Ohio St.3d 369, is not a case on point. The court in our case did not instruct the jury that prior calculation and design was a separate aggravating circumstance which must be weighed as did the trial court in Penix. See id. at 370. The court merely stated that one aggravated circumstance was the fact that appellant was found guilty of committing the offense while committing, attempting or fleeing immediately after committing or attempting aggravated robbery and he was either the principal offender in the aggravated murder or he committed the aggravated murder with prior calculation and design. (Mitigation Tr. 159-160). Hence, this argument fails.
Appellant's forty-first claim for relief states, "the Court of Appeals improperly weighed the aggravating circumstances." As we stated under appellant's twenty-eighth claim for relief, a defendant may not use a post-conviction relief petition to ask a trial court to find that an appellate court erred when it reviewed the case on direct appeal. Any problem that appellant had with our weighing process is for Supreme Court review only. Accordingly, the Supreme Court conducted its own independent review of the appropriateness of appellant's sentence. Palmer at 575-577. Therefore, the trial court was not permitted to hold an evidentiary hearing on this issue.
Appellant's forty-second claim for relief states that he is entitled to post-conviction relief due to the cumulative errors alleged in his first through forty-first claims for relief. These claims for relief were all properly disposed of without an evidentiary hearing on basis such as res judicata, insufficient documentation establishing entitlement to relief, and failure to state a constitutional infringement. As such, there exists no cumulative error of which to speak.
Appellant's assignments of error are overruled.
For the foregoing reasons, the judgment of the trial court is hereby affirmed.
Cox, P.J., concurs.
Donofrio, J., concurs.
APPROVED:
 _________________________________ JOSEPH J. VUKOVICIH, JUDGE